EL PUEBLO, DEMANDANTE Y APELADO, *v.* HERNÁNDEZ ET AL., ACUSADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de Aguadilla en causa por delito de asesinato en primero y segundo grados.

No. 1089.—Resuelto en julio 24, 1917.

ASESINATO EN PRIMER GRADO—ID. EN SEGUNDO GRADO—EXAMEN DE LOS HECHOS—PRUEBA SUFICIENTE—PREMEDITACIÓN Y DELIBERACIÓN.—En este caso la prueba, tanto directa como circunstancial, demostró el hallazgo de un cadáver malamente mutilado y devorado por los perros, el cual fué identificado; que la muerte fué violenta, producida por numerosas heridas de machete y puñal; que los acusados, uno de ellos hijo del interfecto, quien salió de su casa con dos armas y regresó con una sola y con la camisa ensangrentada, que fué lavada por su madre, fueron vistos en ocasión en que llevaban el cuerpo de la víctima, uno por la cabeza y otro por los pies, en estado desvalido y quejándose; que infirieron a la víctima heridas de machete y puñal, cargando luego su cuerpo al sitio donde fué encontrado; y que entonces limpiaron sus machetes en la orilla de una quebrada. También hubo prueba tendente a demostrar desavenencias entre padre e hijo y que con anterioridad a las agresiones referidas hubieron otras, así como que el día del suceso la víctima salió a hacer unas ventas y que los bolsillos de sus pantalones fueron encontrados vueltos al revés. *Se resolvió:* Que toda esta prueba era suficiente a demostrar la premeditación y deliberación en el delito de asesinato en primero y segundo grado de que fueron convictos los acusados.

INSTRUCCIONES AL JURADO—FALTA DE EXCEPCIONES—ERROR FUNDAMENTAL.—Ninguna sentencia será revocada por supuestos errores en las instrucciones al jurado cuando no se ha tomado excepción, a menos que claramente aparezca que se ha cometido un error fundamental.

CÓMPLICES—AYUDA O INCITACIÓN—MERO SILENCIO.—El mero silencio de un hombre, quien no ayuda o induce y que no tiene intento de ayudar al reo, no hace de él un cómplice.

Los hechos están expresados en la opinión.

Abogado de los apelantes. *Sr. Juan B. Soto.*

Abogado del apelado: *Sr. Salvador Mestre, Fiscal.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Esta es una apelación contra sentencia de culpabilidad de dos hombres, José Hernández Pérez, convicto de asesinato en primer grado, y Juan Lallave, de asesinato en segundo grado. Además de la prueba del hallazgo de un cuerpo malamente mutilado y devorado por perros y de la identificación del cuerpo como el del hombre que en vida era conocido como Juan Hernández, padre de uno de los acusados, un perito prestó declaración tendente a demostrar que el dicho Juan Hernández había tenido una muerte violenta causada por numerosas heridas producidas en su cuerpo y especialmente en el pecho. La prueba principal tendente a la convicción de los acusados fué la declaración de Juan Hernández, *alias* Maneme. El declaró que en diciembre 7, 1915, vió a José Hernández y Juan Lallave en el momento en que llevaban el cuerpo de Juan Hernández González, uno por los pies y el otro por la cabeza, y que cuando el testigo trató de huir, el acusado Juan Lallave lo detuvo cogiéndolo por el cuello, y llamando al otro acusado para que matara al testigo. Que ellos no le hicieren nada en vista de las súplicas que hizo, pero dejándolo *paralizado.* Que entonces José Hernández pegó a Juan Hernández González con su machete y después Juan Lallave le dió una puñalada a la víctima y que dicho José Hernández le dió otra herida, estando la víctima entonces con vida y quejándose; que los dos acusados dejaron el cuerpo un poco más abajo del sitio en que se encontró; que limpiaron sus machetes en la orilla de la quebrada, dejándolos allí; que ellos aterrorizaron al testigo y éste, bajo la acción del temor, guardó silencio por algún

tiempo. Hubo prueba tendente a demostrar que la víctima era un hombre de carácter agrio, que vivía solo, y que no tenía nada que ver con su familia; que el día de la muerte él fué al mercado a hacer algunas pequeñas ventas y tenía un poco de dinero en su bolsillo, y que los bolsillos de sus pantalones se encontraron vueltos al revés. Hubo otra prueba tendente a demostrar un homicidio, ya que otro mozalbete declaró que el acusado José Hernández salió de su casa con dos armas y regresó con una solamente y con manchas en la camisa que dijo el testigo ser de sangre; y que la madre de dicho acusado lavó una camisa ensangrentada que pertenecía a dicho José Hernández. Hubo clara evidencia de numerosas heridas tendente a demostrar que, con anterioridad a las agresiones que Maneme declara, hubieron otros ataques y que los dos hombres estaban conduciendo su supuesta víctima en un estado desvalido.

Consideremos la suficiencia de la prueba para demostrar la deliberación y premeditación que convierte el delito en un asesinato en primer grado. La declaración de Juan Maneme es lo principal que ha habido para demostrar la premeditación y deliberación. Su declaración ha sido atacada pero su testimonio está sostenido por las heridas de la víctima. El jurado tenía el derecho de creerlo. El está sostenido, en verdad, de otra manera curiosa. Juan Lallave ocupó la silla de testigos en su propia defensa y declaró que Juan Maneme y José Hernández cometieron el crimen, no en la arboleda donde el cuerpo fué encontrado, sino en la finca de Juan Hernández, el interfecto. El acusado Lallave se colocó asimismo en la misma situación, con relación a los dos supuestos perpetradores del crimen, que Juan Maneme había ya alegado para sí, esto es, la de un espectador inocente. Pero el dicho acusado había hecho anteriormente manifestaciones al fiscal en las que no hizo en absoluto mención alguna de Maneme. Hubo entre estos dos hombres una contradicción que el ju-

rado tenía el derecho de resolver, y encontramos que hubo prueba suficiente para que ellos así lo hicieran. No estamos convencidos de que el móvil del crimen fuera el robo. Pudo haber sido una reyerta. Existen en la prueba indicaciones de algo así como desavenencias de familia pero el hecho de encontrarse vueltos los bolsillos fué una circunstancia que el jurado tenía el derecho de considerar, para ver si se intentaba ocultar un motivo más grave. Ni es necesario que el móvil apareciera claramente. Sea esto como sea, el continuo tajar del cuerpo de Juan Hernández González por su hijo, especialmente con ayuda de otra persona, era prueba suficiente no sólo de un homicidio sino de un asesinato. Considerando todo el caso la prueba tiende a demostrar que Juan Maneme y Juan Lallave estaban presentes mientras José Hernández tajaba a la víctima. Hay dos testigos que han declarado sobre su participación en el crimen.

Las instrucciones son impugnadas en este caso. En cuanto a la cuestión del grado del delito las encontramos amplias. En otros respectos ellas son algo discursivas y quizás, si se tomaran párrafos aislados, se inclinen un poco contra los acusados. Por lo menos esto sería así, si fuera una cuestión de mera conexión de los acusados con el delito sin hacer referencia al grado del mismo. Puede encontrarse en dichas instrucciones algo semejante a una suposición de que los acusados fueron los autores de la muerte de Juan Hernández González. De otra parte, ningunas excepciones fueron tomadas. No se hizo impugnación alguna al resumen hecho por la corte. En los casos de *El Pueblo* v. *Lebrón,* 23 D. P. R. 658 y *El Pueblo* v. *Barrios,* 23 D. P. R. 831, analizamos los casos y reafirmamos el principio de que no revocaremos por supuestos errores en las instrucciones, cuando no se ha tomado excepción, a menos que estemos satisfechos de que se ha cometido un error fundamental, principio en que insistimos de nuevo en el caso de *El Pueblo* v. *Ramírez de Arellano,* (pág. 263). Aquí se trata más bien de la actitud del juez

que de un error específico. Pero las mismas instrucciones demuestran que el abogado de los acusados basó su defensa principalmente en el fundamento de que el delito era un homicidio involuntario. Por tanto creemos, dado el ambiente de la sala, que los acusados no tenían derecho a quejarse en este caso por cualquiera posible suposición que existiera de su conexión con el delito, y como hemos visto, la corte dió instrucciones muy cuidadosas y distintivas sobre los grados del delito, y sobre la duda razonable eran más favorables de lo que exige la ley. Tomando en conjunto las instrucciones y estando como estamos satisfechos de que hubo prueba suficiente para la convicción, a falta de excepciones, no vemos que exista razón alguna que justifique una revocación.

Los apelantes alegan que Juan Maneme debió haber sido corroborado porque él era un cómplice. El fué en verdad corroborado, pero no se demostró, ni fué admitido por él, que fuera un cómplice. El mero silencio de un hombre, quien no ayuda o induce y que no tiene intento de ayudar al reo, no hace de él un cómplice. 12 Cyc. 192–193. El paso adecuado que debieron haber dado los acusados fué el de pedir a la corte instruyera al efecto de que el jurado no diera crédito a la declaración no corroborada de Juan Maneme, si ellos creían que él era un cómplice.

En cuanto a la identificación del cuerpo, esto fué suficientemente hecho por Juan Maneme, Juan Lallave y Wenceslao Gómez.

La sentencia debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro y Aldrey.

El Juez Asociado Sr. Hutchison disintió.