ANTONIO REYES DELGADO, peticionario y apelado, *v.* LA CORTE MUNICIPAL DE MANATÍ, HON. TOMÁS ACOSTA RAMIS, JUEZ, demandada y apelante.

No. 5222.—*Sometido:* Diciembre 2, 1930. *Resuelto:* Marzo 9, 1930.

*R. A. Gómez,* abogado de *El Pueblo,* por la demandada apelante;
. *Puro Giraud* y *A. Reyes Delgado,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

Ante la Corte Municipal de Manatí se siguió un proceso sobre infracción de la ley de automóviles, siendo el acusado Domingo Ramón González. Defendía a este acusado el abogado Sr. Antonio Reyes Delgado. En la vista del caso, uno de los testigos dijo que antes de ocurrir el accidente por el que se originó el proceso, había visto pasar un automóvil, cuyo *chauffeur* iba embriagado, con la cabeza despeinada y la gorra echada sobre la frente; y como se le preguntara si podía asegurar que el acusado fuera el mismo que él había visto, el testigo dijo que sólo poniéndose el acusado en las condiciones en que él había visto al *chauffeur* de que habló, podría reconocerlo. Entonces el juez Sr. Acosta Ramis ordenó al acusado que se despeinara, se echara el pelo a la cara, y se pusiera la gorra echada hacia la frente. El abogado defensor se opuso y aconsejó al acusado no hiciera lo que se le ordenaba por el juez; la orden de éste fué repetida, y el consejo del abogado lo fué igualmente; el acusado se negó a obedecer la orden. El juez entonces condenó por desacato al abogado y al acusado. La orden que a tal fin dictó la corte es como sigue:

"ORDEN DE LA CORTE.—POR CUANTO en el día de hoy en la vista del caso de El Pueblo de Puerto Rico vs. Domingo Ramón González, por inf. a la Ley de Automóviles de Puerto Rico, compareció el citado acusado en persona y representado por su abogado Antonio Reyes Delgado.

"POR CUANTO en el curso del juicio declaró como testigo de cargo Arturo Rivera, quien manifestó que vió al acusado en la tarde del día que ocurrió la supuesta infracción de la Ley de Automóviles

consistente en haber estropeado al individuo Pascual Bruno y al niño Justo Armando Bruno y asimismo identificó al acusado como a la persona que manejaba el supuesto automóvil cuando ocurrieron los hechos.

"Por cuanto después de haber sido presentada la prueba de El Pueblo, el abogado de la defensa presentó una moción verbal de *nonsuit* alegando que el acusado no había sido suficientemente identificado, y habiendo sido esta moción denegada por la Corte, nuevamente insistió en ella y solicitó que ocupara la silla de testigos Arturo Rivera, a lo cual accedió la Corte haciéndole entonces varias preguntas en cuanto a la identidad del acusado y tratando de confundirle con la declaración original que diera el acusado.

"Por cuanto el testigo Arturo Rivera en su declaración original manifestó que cuando ocurrió el suceso que motiva esta denuncia vió al acusado González con la gorra puesta y el cabello despeinado cayéndole sobre la frente como en aparente estado de embriaguez.

"Por cuanto la Corte para mayor esclarecimiento de los hechos ordenó al acusado que se pusiese la gorra en la forma en que Arturo Rivera manifestó que lo había visto esa tarde, para hacer más específica su declaración en cuanto a la identidad del acusado.

"Por cuanto el Lcdo. Antonio Reyes Delgado ordenó al acusado en calidad de abogado que le representaba que se abstuviera de obedecer la orden de la corte.

"Por cuanto la Corte reiteró su orden de que el acusado se pusiese la gorra para ser identificado y el Lcdo. Reyes Delgado nuevamente le ordenó y aconsejó que no acatase la orden de la Corte.

"Por cuanto es de todo punto necesario a los fines de una perfecta, honrada y seria administración de justicia que las órdenes de los jueces dadas en corte abierta sean debidamente acatadas tanto por los acusados y testigos como por los abogados y demás funcionarios que comparecen ante ellas.

"Por cuanto la actitud de abierta rebeldía de parte del Lcdo. Reyes Delgado es atentatoria al prestigio y respeto que se debe a los Tribunales, y muy especialmente por parte de los abogados que son considerados como oficiales de la misma y que están en el deber de dar un saludable ejemplo al pueblo.

"Por cuanto el art. 61 del Código de Enj. Criminal determina el procedimiento a seguir y la pena que puede imponerse en caso de desacato a la corte.

"Por tanto, visto el art. 61 del Código de Enj. Criminal de Puerto Rico y considerados los hechos que se sucedieron en la mañana de hoy ante esta Corte, entiende la Corte que la actitud asu-

mida por el Lcdo. Antonio Reyes Delgado, como abogado de Domingo Ramón González, al ordenar a su representado que no acatase la orden de la Corte de que se pusiese la gorra cuando ésta lo ordenó, constituye un delito de desacato en corte abierta, tal y como lo define el art. 61 del Código de Enjuiciamiento Criminal antes citado y en su consecuencia le declara culpable del delito de desacato en corte abierta y le impone dos dólares cincuenta centavos de multa o en su defecto un día de cárcel por cada dólar que deje de satisfacer.''

La Corte de Distrito de Arecibo, en un procedimiento de hábeas corpus, decretó la excarcelación del abogado Reyes Delgado por ser nulo el mandamiento de arresto por virtud del que se le detuvo. El abogado Reyes Delgado acudió a la misma Corte de Distrito de Arecibo en petición de *certiorari,* alegando los hechos que antes se exponen, y además que no habiéndose resuelto en el caso de hábeas corpus sobre los méritos del caso, esto es, en cuanto a la resolución por desacato, ésta subsiste, con carácter de ejecutoria, y se puede detener de nuevo al peticionario, y sigue la resolución siendo un gravamen sobre los bienes del mismo peticionario; mantuvo que la resolución es ilegal y nula, y no debe subsistir, y que carecía de remedio en ley.

La corte de distrito ordenó se librara el auto; oyó el caso, y dictó sentencia por la que se declara con lugar la petición de *certiorari,* y nula e ilegal la sentencia de la Corte Municipal de Manatí por la que se condenó a Antonio Reyes Delgado por desacato. Contra esa sentencia se interpuso apelación por el demandado Tomás Acosta Ramis, Juez municipal de Manatí.

En este tribunal ha comparecido a sostener la apelación el fiscal del tribunal, en nombre del referido juez.

La cuestión principal en este caso es si un tribunal tiene derecho para hacer que un acusado, por cualquier medio, se convierta en testigo de cargo en un proceso. Esta cuestión se encuentra tratada con gran acierto en la relación de hechos y opinión del juez Samalea, de la Corte de Distrito de Arecibo.

■■■ El principio de que a nadie puede obligarse a testimoniar contra sí mismo, es casi universal. La Constitución de los Estados Unidos de América, lo tiene consagrado como una de las más firmes salvaguardias de la libertad y la seguridad personal de los ciudadanos.

Naturalmente, en manos de los juristas el principio ha tenido que sufrir una depuración y un estudio casi constante. Y la posibilidad de sus modalidades y sus limitaciones ha sido algo que ha ocasionado preocupación a los estudiantes y expositores de la ley, y motivo de frecuentes decisiones judiciales. El juez de distrito cita los casos *Counselman* v. *Hitchock*, 142 U. S. 547, el caso *Emery*, 107 Mass. 172, *Galaher* v. *State*, 12 S. W. 1095, *Turnman* v. *State*, 95 S. W. 536, *Ex parte Miskimins*, 49 L. R. A. 831, y los de esta jurisdicción *Ex parte Le Hardy*, 17 D.P.R. 1024, *Muñiz* v. *Juez de Distrito*, 14 D.P.R. 199, y *Coll* v. *Leake*, 17 D.P.R. 357.

El fiscal de este tribunal, cita gran número de casos, entre ellos *People* v. *Carey*, 125 Mich. 535, *State* v. *Graham*, 74 N. C. 648, *U. S.* v. *Cross*, 20 D. C. 365, *State* v. *AhChuey*, 33 Am. Rep. 530, *Holt* v. *United States*, 218 U. S. 245, *State* v. *Neville*, 95 S. E. 55, y otros, y la opinión del comentarista Wigmore. Y algunos de ellos (*Emery's case, Counselman* v. *Hitchock*) aparecen citados por el apelado, que también cita los casos de *Cooper* v. *Alabama*, 4 L.R.A. 766; *Ex parte Miskimins*, 49 L. R. A. 831, y el mismo tratadista Wigmore.

No tienen aplicación a este proceso todos aquellos casos en que el acusado se prestó, sin objeción, a realizar el acto de identificación que se exigía de él; porque su asentimiento entraña la renuncia de su privilegio. Ni la tienen tampoco los casos en que se ordenó al acusado, simplemente, que se pusiera de pie, posición corriente y natural.

El acto por el que el acusado ha de revelar necesariamente dato o indicio claro de su participación en la comisión de un delito, no puede ser exigido a ningún acusado, porque ello es aun más arriesgado que exigirle que declare contra sí mismo,

ya que el declarar tiene siquiera la oportunidad de defenderse y explicar sus actuaciones.

De la jurisprudencia que por una y otra parte se nos cita, deducimos:

Primero: que el derecho de no testificar contra sí mismo, puede ser renunciado, y que el acusado que se somete a declarar, o a realizar actos equivalentes a una declaración o confesión, no puede luego invocar el derecho renunciado.

Segundo: que hay actos que por ser diarios y corrientes, y no envolver necesariamente confesión o declaración, pueden ser requeridos de un acusado, aunque dudamos que su desobediencia a tal requerimiento sea en todos los casos un desacato.

Tercero: que el consejo del abogado a su cliente para que no obedezca una orden que se dicta en violación de los derechos garantizados por la Constitución, no constituye desacato.

En el caso *El Pueblo* v. *Miranda,* 39 D.P.R. 271, se trataba de que el juez sentenciador, en un proceso por acometimiento y agresión, dijo que él mismo podía ver que el acusado era un hombre de más de treinta años; no se había exigido que el acusado se pusiera de pie, u ocupara la silla testifical. Se citaron por este tribunal otros casos, como el de *El Pueblo* v. *Ortiz,* 29 D.P.R. 501, y *El Pueblo* v. *Hernández,* 34 D.P.R. 324, sosteniendo que la corte, por mera inspección, no tenía derecho a condenar. Basta leer la opinión para encontrar la diferencia entre el presente y aquel caso.

La lectura de la orden de la Corte Municipal de Manatí, es suficiente por sí sola, para afirmar que ella era ilegal y contra los derechos consagrados por la Constitución, y que se incluyeron en nuestra Acta Orgánica. Ni el acusado tenía que obedecerla, ni su abogado por qué aconsejarle que lo hiciera.

La orden no ha sido anulada, ya que no aparece así, ni las partes discuten la afirmación de que ella está aún en vi-

gor. Y la sentencia que la anula era necesaria; y por estar de acuerdo con la ley fundamental y la jurisprudencia, *debe ser tal sentencia confirmada.*